566 A.2d 885

**Francis J. CATANIA**

v.

**HANOVER INSURANCE CO. and Charles A. Harad.**

**Appeal of Charles A. HARAD, Appellant.**

Superior Court of Pennsylvania.

Argued May 18, 1989.

Filed Nov. 28, 1989.

H. Robert Fiebach, Philadelphia, for appellant.

Garland D. Cherry, Sr., Media, for Catania, appellee.

Before BECK, JOHNSON and MELINSON, JJ.

JOHNSON, Judge.

Charles A. Harad appeals from an Order denying his Petition for Leave to Amend Answer and New Matter. On this appeal, we address whether a public figure must prove actual malice to recover under the Dragonetti Act, 42 Pa. C.S. §§ 8351–8354, for alleged reputational harm based upon false statements made in an Answer, New Matter and Cross-complaint filed in the court of common pleas. Finding that actual malice is not required, we affirm the order of the court below denying Harad's petition.

This matter arises out of two prior actions commenced by Francis J. Catania, President Judge of the Delaware County Court of Common Pleas, against the Hanover Insurance Company for damage to his automobile. The first action (Catania I) involved a claim by Catania under a Hanover insurance policy to recover the cost of repairing damage to his automobile. While Catania I was pending, Catania commenced a second action against Hanover (Catania II) wherein he sought compensatory, punitive and treble damages, together with counsel fees and costs against Hanover

for alleged fraud and violations of the Unfair Insurance Practices Act as a result of Hanover's refusal to pay the insurance claim which was the subject of litigation in Catania I.

Hanover filed Preliminary Objections to the complaint in Catania II, alleging that plaintiff failed to state a claim on which relief could be granted. The court granted Hanover's Preliminary Objections in part and dismissed plaintiff's claim under the Unfair Insurance Practices Act. Hanover, who was represented at the time by appellant Harad, then filed an Answer, New Matter and Counterclaim to the remaining allegations in Catania II. In this pleading, Hanover alleged that Catania defrauded Hanover to obtain lower insurance premiums by insuring his automobile under a fleet policy procured by a business operated by Catania's brother.

On May 22, 1985, Harad withdrew his appearance as counsel of record for Hanover in Catania II, and new counsel entered an appearance on behalf of Hanover. On February 13, 1986, the court granted Hanover's uncontested petition to discontinue the counterclaim, without prejudice, and on June 23, 1986, the court granted Hanover's uncontested petition to amend its Answer and New Matter. On June 27, 1986, Hanover filed an amended Answer and New Matter in Catania II, withdrawing the fraud allegations previously asserted.

Judge Catania filed the instant action (Catania III) under 42 Pa.C.S. §§ 8351–8354 alleging that Hanover and its attorney, Harad, committed the tort of wrongful use of civil proceedings as a result of the New Matter and Counterclaim filed in Catania II. Thereafter, Catania and Hanover entered into a settlement of Catania II and III. Catania II was marked "settled, discontinued and ended" and this action was marked "settled, discontinued and ended" as to Hanover. The lower court, by Order dated February 25, 1988, later struck the discontinuance entered in this action as to Hanover and ordered that Hanover participate at trial so that its status as a joint tortfeasor may be determined.

On June 17, 1987, following the disposition of Preliminary Objections to the complaint, Harad filed an Answer and New Matter to the complaint. On July 22, 1987, plaintiff filed a verified reply to Harad's New Matter. Thereafter on March 16, 1988, Harad filed a petition for leave to amend his Answer and New Matter to raise defenses based upon the standard of proof set forth in the United States Supreme Court's decision in *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). On October 18, 1988, the Honorable Charles B. Smith entered an Order with an accompanying Opinion denying Harad's petition. Harad took appeal to this court and the lower court filed a supplementary Opinion in further support of its October 18, 1988 Order.

On appeal, Harad asks that we consider whether:

 I. THE DEFENDANT SHOULD BE PERMITTED LEAVE TO FILE AN AMENDED ANSWER AND NEW MATTER TO RAISE AN ADDITIONAL AFFIRMATIVE DEFENSE, IN VIEW OF RECENT FIRST AMENDMENT JURISPRUDENCE, THAT PLAINTIFF, A PUBLIC FIGURE AND PUBLIC OFFICIAL, MUST PROVE THAT DEFENDANT ACTED WITH "ACTUAL MALICE," *I.E.*, WITH KNOWLEDGE THAT THE STATEMENTS MADE WERE FALSE OR WITH RECKLESS DISREGARD AS TO WHETHER OR NOT THEY WERE TRUE, IN ORDER TO RECOVER DAMAGES UNDER 42 PA.C.S. § 8351, *ET SEQ.* FOR ALLEGED REPUTATIONAL HARM BASED UPON THE CONTENT OF A PUBLICATION.

 II. THE PLAINTIFF DEMONSTRATED THAT THE PROPOSED AMENDMENT WAS AGAINST A POSITIVE RULE OF LAW.

 III. THE PLAINTIFF DEMONSTRATED SUFFICIENT PREJUDICE TO DISALLOW THE PROPOSED AMENDMENT.

In essence, we are asked to determine whether the First Amendment of the United States Constitution protecting

freedom of speech dictates that Judge Catania prove that Harad acted with actual malice in establishing a prima facie violation of the Dragonetti Act.

The statutory elements of wrongful initiation of a civil proceeding are set forth at 42 Pa.C.S. 8351:

(a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a *grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based;* and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required. —The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

42 Pa.C.S. § 8351. [Emphasis added]. Thus, the act itself sets forth all of the elements. Harad contends that "Judge Catania seeks to recover damages under the Dragonetti Act for reputational harm and emotional distress resulting from the falsity of statements made by Mr. Harad." He argues that First Amendment concerns are implicated in this case because the gravamen of Catania's complaint is that Harad made false allegations on behalf of his client Hanover.

■ To the contrary, the gravamen of Catania's complaint is that he has been forced to defend against a *wrongfully initiated civil action* for which he seeks damages. In order to prove this tort, Catania must show that the action should not have been the subject of litigation and in doing so he may offer evidence that there existed no factual basis for the action. The harm here is not caused by the false allegations, themselves, but rather the initiation of a suit premised upon these false allegations. This in itself distinguishes an action upon the Dragonetti Act

from the torts of defamation and intentional infliction of emotional distress wherein the harm alleged is founded upon the injurious speech itself.

Harad, disregarding this distinction, nevertheless argues that the heightened standard of actual malice should prevail here because 42 Pa.C.S. 8353 provides recovery for harm to reputation by any defamatory matter alleged as the basis of the proceedings. Section 8353 is set forth as follows:

(1) The harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings.

(2) *The harm to his reputation by any defamatory matter alleged as the basis of the proceedings.*

(3) The expense, including any reasonable attorney fees, that he has reasonably incurred in defending himself against the proceedings.

(4) Any specific pecuniary loss that has resulted from the proceedings.

(5) *Any emotional distress that is caused by the proceedings.*

(6) Punitive damages according to law in appropriate cases.

[Emphasis added]. While we recognize that the Dragonetti Act does permit recovery for damage to reputation and emotional distress, this fact alone does not transform this tort, the purpose of which is to discourage baseless civil suits, into an action protecting against false statements.

█ Even if this were a suit to recover damages directly resulting from the publication of false statements, we find no constitutional authority which would dictate the result that Harad suggests. Harad, relying principally upon *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Hustler Magazine v. Falwell*, *supra*, argues that first amendment jurisprudence establishes the rule that every time a public figure attempts to recover for damage to reputation or emotional distress as the result

of false statements against him, the public figure must show actual malice. We must disagree. These cases are inapposite under the circumstances presented.

*New York Times v. Sullivan, supra,* and *Hustler Magazine v. Falwell, supra,* required a standard of actual malice in a defamation action and in an intentional infliction of emotional distress action, respectively, where a public figure plaintiff sought relief for damages directly resulting from the publication of arguably false statements. In those cases, the United States Supreme Court established the culpability standard of actual malice in order to provide breathing room for first amendment protections. These cases reasoned that even though false statements are of little constitutional value, they are nevertheless inevitable in the free discussion of ideas. Therefore a rule imposing strict liability on a publisher would have a chilling effect upon speech worthy of constitutional protection.

Clearly, the case before us is distinguishable. The speech here at issue did not occur in the marketplace of ideas, but in a civil proceeding. A civil proceeding is not a forum for public debate but a precise and methodical mechanism designed for the orderly resolution of disputes between specific parties. To extend the actual malice standard here would not advance the rationale of *New York Times v. Sullivan, supra,* and *Hustler Magazine v. Falwell, supra* that first amendment protections must be provided with breathing room so that robust political debate may proceed unencumbered.

 The legislature in promulgating this statutory action of wrongful initiation of civil proceedings did not intend that a plaintiff prove that the defendant acted with actual malice in the initiation of his civil suit. Finding that the statute sets forth all of the elements necessary to prove the tort of wrongful initiation of civil proceedings, and finding that there is no basis in law for requiring a different standard, we conclude that the Dragonetti Act does not require a prima facie showing of actual malice.

■ We recognize the Commonwealth's policy of permitting liberal amendment of pleadings. *Gallo v. Yamaha Motor Corp., U.S.A.*, 335 Pa.Super. 311, 313, 484 A.2d 148, 150 (1984). Nevertheless, such a policy does not extend to the amendment of pleadings for the purpose of asserting a defense not provided by law. Accordingly, we affirm the order of the court below denying Harad's petition to amend.

Order affirmed.

BECK, J., concurs in the result.